875 A.2d 958

GOLDBERGER, SELIGSOHN & SHINROD, P.A., PLAINTIFF–AP-
PELLANT, v. MARK BAUMGARTEN, DEFENDANT–RESPON-
DENT, AND MANDLEBAUM, SALSBURG, GOLD, LAZRIS, DIS-
CENZA & STEINBERG, P.C., DAVID A. MAZIE AND NAGEL
RICE DREIFUSS & MAZIE, L.L.P., DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted May 23, 2005—Decided June 14, 2005.

Before Judges PETRELLA, YANNOTTI and BILDER.

*Pearce, Vort & Fleisig, L.L.C.*, attorneys for appellant (*Robert A. Vort*, on the brief).

*Mark Baumgarten*, respondent pro se.

The opinion of the court was delivered by

YANNOTTI, J.A.D.

Plaintiff Goldberger, Seligsohn & Shinrod, P.A. appeals from a final judgment entered May 28, 2004 dismissing its complaint against defendant Mark Baumgarten. We affirm in part, reverse in part and remand for further proceedings.

## I.

This action was commenced on April 3, 2003, when plaintiff filed a complaint in the Law Division, Essex County, against defendants Mark Baumgarten; Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, P.C.; David A. Mazie; and Nagel Rice Dreifuss & Mazie, L.L.P. In its complaint, plaintiff asserted claims for breach of contract and recovery under a *quantum meruit* theory. Plaintiff alleged that it is entitled to legal fees arising from litigation instituted following the death of Earl Faison. Plaintiff claimed that Baumgarten had agreed to work together with plaintiff and share fees resulting from separate actions instituted by plaintiff and Baumgarten on behalf of the Faison family members. The claims against Mazie and the Nagle Rice firm were dismissed by order filed July 29, 2003, and plaintiff consented to the entry of an order on April 2, 2004 dismissing the claims asserted against the Mandelbaum firm. Baumgarten consequently is the sole remaining defendant in the case and therefore we will refer to him in this opinion as defendant.

On April 15, 2004, defendant filed a motion for summary judgment. He argued, among other contentions, that the alleged agreement was for a referral fee that is not permitted by *R.* 1:39–

6(d) because defendant is not a certified civil trial attorney. Defendant also argued that the alleged agreement to divide fees contravened *R.P.C.* 1.5(e) because it was not in writing, did not divide fees in proportion to the work of the lawyers and the clients never consented to joint representation. In addition, defendant maintained that plaintiff had done nothing that would warrant compensation under a *quantum meruit* theory.

In support of his motion, defendant submitted a certification in which he asserted that, in April 1999, the Faison family retained him to pursue an action against certain police officers for the wrongful death of Earl Faison. Mikki Juane Wilkins is the mother of two of Faison's four children, and she is also the guardian of another of Faison's children. Wilkins was appointed by the Essex County Surrogate as administratrix ad prosequendum for the Estate. Defendant filed a lawsuit on behalf of the Estate on February 23, 2000.

Defendant stated that shortly after the filing of the complaint, he received a call from Irwin Seligsohn, who advised that he represented Hakisah Bell and her son, Muttalib Faison, who is Earl Faison's fourth child. Seligsohn objected to defendant's assertion of a claim on behalf of Muttalib. Seligsohn contacted defendant again in July 2000. By this time, the action commenced by defendant on behalf of the Estate had been removed to federal court.

Defendant and a partner at the Mandelbaum firm met with Seligsohn on July 31, 2000. Defendant advised Seligsohn about the case and offered to provide him with copies of pleadings and correspondence; however, Seligsohn told defendant that he preferred to file a separate lawsuit on behalf of Muttalib in the Superior Court. Defendant asserted that, contrary to plaintiff's allegations, he did not discuss fee sharing at the July 31, 2000 meeting. He said, "The only financial matter discussed was Mr. Seligsohn's offer to reimburse the Mandelbaum Firm for any costs it incurred for expert reports requested by and sent to Mr. Seligsohn." In August 2000, Seligsohn filed an action on behalf of

Muttalib in the Superior Court, and that action also was removed to federal court.

The federal judge dismissed the action brought by Seligsohn by order filed August 13, 2001. Defendant stated in his certification that, after the lawsuit was dismissed, plaintiff was not involved in prosecuting the Estate's case. Mazie and his firm became co-counsel with defendant for the Estate's lawsuit. Following a lengthy period of mediation, the Estate's action was settled. The federal court approved the settlement, which included an allocation of attorneys' fees. Plaintiff did not assert a claim for fees when the federal court approved the settlement.

Five months later, Seligsohn called defendant and inquired about receiving a fee for the time he devoted to explaining the settlement to Bell, as well as processing documents for distribution of the settlement proceeds. Defendant requested that Seligsohn send him a letter detailing the services he had performed and stating the amount he wanted to be paid. Seligsohn later called defendant and asked for 25% of the fee award, based on his client's receipt of a 25% share of the settlement proceeds. Defendant rejected the demand.

Seligsohn filed a certification in opposition to the motion. Seligson asserted that he first met Bell in August 1999 and thereafter he prepared an application for Bell's appointment as administratrix ad prosequendum for Muttalib. When Seligsohn and Bell presented the application to the Essex County Surrogate, they were informed that the application could not be considered because the Surrogate had already appointed Wilkins as administratrix ad prosequendum for the Faison Estate. Bell told Seligsohn that she never received notice of Wilkins' appointment. Seligsohn thereupon contacted defendant. Seligsohn stated:

> We agreed to work together on our two cases and to divide the workload. I said to him and he agreed, that each of the decedent's children were entitled to 25% of the net recovery, and my fee should be limited to 25% of the total fee. We also agreed to share costs in the same percentage.

Seligsohn thereafter filed a complaint in the Superior Court on behalf of Bell and Muttalib. Seligsohn stated that he drafted

interrogatories and answers to interrogatories and also participated in depositions. Seligsohn paid the Mandelbaum firm $1,100, which was one-fourth of the fee for a pathologist who was retained by defendant for the Estate litigation.

Seligsohn additionally asserted that when the actions were removed to the federal court, the magistrate judge suggested that only one lawsuit was needed because Wilkins had legal authority to act for Muttalib. Seligsohn said that he did not object "because [he] already had an agreement and a working relationship with [defendant]." Seligsohn then wrote to the magistrate judge and in a letter dated June 13, 2001, he stated:

This letter will confirm that Mikki Juane Wilkins who was appointed by the Essex County Surrogate as Administratrix ad Prosequendum for the Estate of Earl Faison, deceased, will act in that capacity on behalf of the minor, Muttalib Faison. The assertion of Muttalib Faison's legal rights arising from the wrongful death of his father, Earl Faison, will be pursued under the complaint filed by Mikki Juane Wilkins. By agreement with Mr. Baumgarten I will participate as co-counsel for the plaintiff.

According to Seligsohn, defendant never objected to this representation.

Seligsohn asserted that subsequently the Nagel Rice firm entered an appearance for the Estate in the federal action. On or about February 5, 2002, defendant wrote to Seligsohn and enclosed a check in the amount of $1,100 to reimburse him for his contribution to the expert's fee. Seligsohn stated that he continued to receive copies of documents and correspondence related to the case. He was later told by Mazie that a settlement had been reached and Mazie submitted the proposal to Seligsohn for his approval. Seligsohn said that he reviewed the proposal with Bell. Mazie also sent Seligsohn copies of documents for Bell's signature. Seligsohn stated, "When the settlement was consummated, I expected to receive my share of the fee." When he did not receive the fee, he commenced this action.

Baumgarten filed a reply certification in which he stated that plaintiff had not established that the fee plaintiff was seeking was in proportion to the work performed. He further stated that

plaintiff had not shown that it had assumed any responsibility for representing the Estate or that the Estate consented to plaintiff's involvement in the litigation. Defendant stated that he did not recall reviewing Seligsohn's June 13, 2001 letter to the magistrate judge. He asserted that he did not pre-approve the letter or ever discuss it with his client. He added that, "[A]t no time did the plaintiff ever request Ms. [Wilkins] to consent to the alleged offer of representation or file a Notice of Appearance in the Estate case."

The motion was heard on May 28, 2004. The judge decided to grant defendant's motion for summary judgment. Her reasons were stated succinctly:

> ... the simple fact of the matter is, ... that there is nothing under the law ... that satisfies me ... that he is entitled to a share of this fee. There's not a referral to a certified lawyer. There's not a—a fee—splitting agreement ... in writing. I think it has to be more than just this agreement in the fashion that he alleges. There certainly has been nothing proposed by way of a quantum meruit. . . .

## II.

In our review of an order granting summary judgment, we employ the same standard applicable in the trial courts. *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.1998). Summary judgment may only issue when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *R.* 4:46–2(c). Like the motion judge, we must view the evidential materials presented on the motion in the light most favorable to the non-moving party and we must determine whether the evidence is sufficient to permit a rational fact-finder to resolve the alleged disputed issue in favor of the non-moving party. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). "[W]hen the evidence is 'so one-sided that one party must prevail as a matter of law,' ... the trial court should not hesitate to grant summary judgment." *Ibid.* (quoting from *Anderson v. Liberty*

*Lobby, Inc.*, 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

■ Plaintiff first argues that the motion judge erred in concluding that plaintiff's claim was barred because the alleged agreement impermissibly required payment of a referral fee. Under *R.P.C.* 7.2(c) and *R.P.C.* 7.3(d), lawyers are generally precluded from giving "anything of value" to a person for recommending the lawyer's services, or to secure the lawyer's employment. However, *R.* 1:39-6(d) permits the division of fees by a certified attorney in certain circumstances:

> A certified attorney who receives a case referral from a lawyer who is not a partner in or associate of that attorney's law firm or law office may divide a fee for legal services with the referring attorney or the referring attorney's estate. The fee division may be made without regard to services performed or responsibility assumed by the referring attorney, provided that the total fee charged the client relates only to the matter referred and does not exceed reasonable compensation for the legal services rendered therein. The provisions of this paragraph shall not apply to matrimonial law matters that are referred to certified attorneys.

[*R.* 1:39-6(d)].

We agree with plaintiff that the rules pertaining to the payment of referral fees have no application to this dispute. Plaintiff does not seek a fee on the basis that plaintiff "referred" a matter to defendant. Plaintiff alleges that, although defendant filed a separate action on behalf of the Faison Estate, and in that action asserted claims on behalf of Muttalib, plaintiff was retained by Hakisah Bell to file a separate lawsuit to assert claims on behalf of Muttalib. Plaintiff contends that there was an agreement between plaintiff and defendant to work together in the handling of these separate cases, with the understanding that plaintiff would receive 25% of the fee ultimately received as a result of their joint efforts. While there is a factual dispute as to whether any such agreement was made, the alleged understanding between plaintiff and defendant to work together and divide the fees earned does not involve the "referral" of a matter of the sort addressed in the rules.

■ We agree, however, with the motion judge's conclusion that the alleged agreement did not conform to the requirements of *R.P.C.* 1.5(e) and therefore plaintiff was not entitled to relief on the breach of contract claim. The rule states:

Except as otherwise provided by the Court Rules, a division of fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer, or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; and (2) the client is notified of the fee division; and (3) the client consents to the participation of all the lawyers involved; and (4) the total fee is reasonable.

[*R.P.C.* 1.5(e)].

According to plaintiff, the parties agreed that plaintiff would receive 25% of the fee earned in the action brought by defendant on behalf of the Estate. This alleged agreement to divide fees is not "in proportion to the services" performed by the lawyers. Moreover, there was no written agreement with the clients under which it was agreed that plaintiff and defendant would assume joint representation. In addition, there is no evidence that the clients were notified of the alleged fee division, nor is there any evidence that the clients consented to the participation of all of the lawyers involved. In the circumstances, the judge correctly found that the alleged agreement did not satisfy the requirements of *R.P.C.* 1.5(e). Relief could not be awarded for a breach of the alleged agreement because it was contrary to law. *Vasquez v. Glassboro Service Ass'n, Inc.*, 83 *N.J.* 86, 98, 415 *A.*2d 1156 (1980). Therefore, the judge properly granted summary judgment on Count One.

■ We are convinced, however, that the judge erred in granting summary judgment on Count Two. Although plaintiff could not be awarded 25% of the total fee on the basis of the alleged agreement, plaintiff presented sufficient evidence to raise a genuine issue of material fact as to whether it was entitled to relief on a *quantum meruit* theory. *Quantum meruit* is a form of quasi-contractual recovery and "rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Weichert Co. Realtors v. Ryan*, 128 *N.J.* 427, 437, 608 *A.*2d 280 (1992) (quoting *Callano v. Oakwood Park*

*Homes Corp.,* 91 *N.J.Super.* 105, 108, 219 *A.*2d 332 (App.Div. 1966)). Recovery is permitted in quasi-contract because one party has conferred a benefit on the other and, in the circumstances, it would be unjust to deny recovery. *Ibid.* To recover under *quantum meruit,* plaintiff must establish: 1) that the services were performed in good faith, 2) the services were accepted by the person for whom they were rendered, 3) plaintiff reasonably expected compensation for performing the services, and 4) the value of the services is reasonable. *Starkey v. Estate of Nicolaysen,* 172 *N.J.* 60, 68, 796 *A.*2d 238 (citing *Longo v. Shore & Reich, Ltd.,* 25 *F.*3d 94, 98 (2d Cir.1994)).

Seligsohn asserted in his certification that he performed services for Hakisah Bell and Muttalib Faison. It is undisputed that Seligsohn filed a complaint on behalf of Muttalib. He stated that he drafted interrogatories and answers to discovery requests. He also stated that he attended depositions and court proceedings. When the federal court dismissed the complaint filed by Seligsohn, Muttalib's claims were pursued by defendant and Mazie in the separate action. There is a dispute between the parties as to what, if anything, Seligsohn did to advance Muttalib's claims after the federal court dismissed his complaint. In his certification, Seligsohn asserted that there was little for him to do when Mazie assumed responsibility for the case because Mazie "made it very clear that he wanted complete control over the case." However, according to Seligsohn, he provided advice to Hakisah Bell respecting the settlement. He stated that Mazie "could not have secured Bell's consent to the settlement without [his] participation." In addition, there is evidence in the record that Seligsohn's services were accepted by his clients. Seligsohn also asserted facts from which a fact-finder could conclude that he had a reasonable expectation of compensation. We are satisfied that this evidence was more than sufficient to warrant denial of defendant's motion for summary judgment on plaintiff's *quantum meruit* claim.

Therefore, we affirm the grant of summary judgment on the breach of contract claim in Count One, reverse the grant of summary judgment on the *quantum meruit* claim in Count Two, and remand the matter to the trial court for further proceedings.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.