**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4862-15T1

DEXTER & KILCOYNE, ESQS.,

    Plaintiffs-Appellants,

v.

ANTHONY X. ARTURI, JR., ESQ.
and ARTURI, D'ARGENIO, GUAGLARDI
& MELITI, LLP,

    Defendants-Respondents.

_____

Argued August 1, 2017 — Decided August 17, 2017

Before Judges Sabatino and O'Connor.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No. L-10660-15.

Bruce H. Dexter argued the cause for
appellants (Dexter & Kilcoyne, attorneys; Mr.
Dexter, on the briefs).

Anthony X. Arturi, Jr., argued the cause for
respondents (Arturi, D'Argenio, Guaglardi &
Meliti, LLP, attorneys; Mr. Arturi, of counsel
and on the brief).

PER CURIAM

    This appeal concerns a dispute over unpaid legal services

under circumstances in which a personal injury client was

represented on a contingent basis by two successive law firms. After her first law firm performed certain pre-lawsuit work, the client discharged that firm and retained a second law firm. The second law firm filed suit and recovered a settlement for the client, but declined to share any of the contingency fee with its predecessor. The first law firm consequently sued the second law firm for the reasonable value of the work it had performed. The trial court dismissed on summary judgment the first law firm's claim for fees, and this appeal ensued.

For the reasons that follow, we vacate the summary judgment order, and remand for further proceedings in the trial court to reconsider the first law firm's quantum meruit claims.

The pertinent sequence of events is relatively straightforward and in many respects undisputed. In April 2010, the client[1] ingested a french fry that contained a fragment of metal. After she began having pain and difficulty breathing, she went to a local hospital. Doctors conducted emergency surgery to remove the metal fragment, which had lodged in her esophagus and pierced her lung.

After recovering from this mishap, the client consulted with plaintiff, Dexter & Kilcoyne, Esqs. ("the first law firm"). She

---

[1] We discern no necessity to mention the client's name in this opinion.

entered into a written retainer agreement with the firm to represent her interests in connection with the french fry incident. Among other things, the agreement specified that the client would pay a contingent fee to be computed in accordance with the sliding scale percentages set forth in Rule 1:21-7. As is customary, the retainer agreement also recited that "[i]n the event there is no recovery . . . the client shall not be obligated to pay the [first] attorney for his services, but . . . shall reimburse the attorney for all disbursements made . . . in connection with the institution and prosecution of the claim."

After being retained, the first law firm performed several initial steps in furtherance of the client's interests. Among other things, between April 2010 and March 2011, the first law firm obtained the client's medical and anesthesia records, spoke with prospective expert witnesses, prepared a form of complaint, conducted legal and Internet research, and exchanged correspondence with the manufacturer of the defective french fry. Perhaps most importantly, the first law firm obtained from the hospital a key item of physical evidence, the metal fragment that had been removed from the client in surgery, and sent the fragment to a laboratory for analysis.

In March 2011, before any lawsuit was filed against the manufacturer, the client notified the first law firm that she was

A-4862-15T1

terminating its services. About two weeks later, the first law firm received a fax from defendants, Anthony X. Arturi, Jr., Esq. and Arturi, D'Argenio, Guaglardi & Meliti, LLP ("the second law firm"), asking for the client's file. The first law firm accordingly transmitted the file as requested to the second law firm, accompanied by a letter and a copy of a client invoice for the services the first law firm had rendered.

The invoice reflected that the first law firm had devoted 29.05 hours of attorney time to the client's matter and had incurred $245.75 in disbursements. The letter requested that the second law firm promptly reimburse the first law firm for its disbursements and "retain a copy of our statement in your file so that we can be compensated for our time spent on this matter at the conclusion of the case." The second law firm did not acknowledge or respond to the first law firm's letter, based upon an assumption that it owed no obligations to a law firm that the client had discharged and which had not filed suit. Nor did the second law firm pay the disbursements as requested.

After entering into its own contingent fee arrangement with the client, the second law firm filed a personal injury action on the client's behalf in federal court against the french fry manufacturer. Following several years of litigating the case, the second law firm negotiated a settlement for the client in 2013.

The settlement was for a confidential sum not disclosed in this appellate record. We were advised at oral argument on the appeal that the second law firm collected a contingent fee of one-third of the settlement amount, after deducting its own disbursements.

According to the first law firm, it made repeated inquiries of the second law firm about the status of the client's matter but received no response. Eventually, in November 2014, the second law firm advised the first law firm that the client's matter had settled, that the settlement terms were confidential, and that it did not have a legal obligation to share any portion of the fee or the client's recovery with the first law firm.

The first law firm claimed it was entitled to a lien on the client's recovery, as well as recovery of the reasonable value of the services it had provided. The second law firm disagreed, which prompted the first law firm to attempt initially to gain relief from the federal court. After the federal court apparently indicated that the fee dispute was more appropriately resolved in the Superior Court, the first law firm filed the present action against the second law firm.

The second law firm moved for summary judgment, which the trial court granted. In her written statement of reasons, the motion judge observed that the second law firm had shown "an apparent lack of professional courtesy" in failing to respond to

the first law firm's March 2011 letter asserting a right to share in an ultimate recovery of proceeds in the case. Nonetheless, the judge also concluded, albeit with reluctance, that the controlling law did not afford the first law firm any recourse.

We need not devote extended discussion to this unfortunate situation. First, we agree with defendants and the trial court that the first law firm had no basis to assert a lien on the client's settlement proceeds. The governing statutory provision, N.J.S.A. 2A:13-5, only allows a lien for compensation to be asserted by an attorney in situations in which that attorney has filed a complaint, third-party complaint, counterclaim, or other pleading on the client's behalf. That did not occur here because no such pleading had been filed by the first law firm by the time the client terminated its services in March 2011.

The absence of a lien, however, does not end the analysis. Our law has recognized a personal injury attorney's potential entitlement to a quantum meruit recovery for the reasonable value of services that he or she provided before litigation was brought by a successor lawyer or the client, pro se. Frequently, and ideally, the first law firm and the successor law firm(s) reach an agreement for the ultimate allocation of the fee at the time the client's file is transferred. However, there are instances, as in this case, in which no such agreement is attained and the

6

first law firm is left to the court's legal and equitable authority to fashion a remedy.

The governing principles are aptly set forth in a leading New Jersey treatise on attorney ethics:

> When a client dismisses one attorney and hires a second, the two often will have no agreement on the division of fee, and so the LaMantia analysis will come into play. See, e.g., Straubinger v. Schmitt, 348 N.J. Super. 494, 500, 505 (App. Div. 2002). See also Cohen v. Radio-Electronics Officers, 146 N.J. 140, 162-163 (1996), indicating that when an attorney is dismissed after having done some work, the "modern rule" is that the attorney may recover the fair value of the services rendered before the discharge, and that this rule applies to contingent fee cases as to others.
>
> [Kevin H. Michels, New Jersey Attorney Ethics 895 (2016).]

In LaMantia v. Durst, 234 N.J. Super. 534, 540-41 (App. Div.), certif. denied, 118 N.J. 181 (1989), which is cited above by Professor Michels, we set forth the following factors that guide a quantum meruit valuation of the superseded attorney's services: (1) the length of time each of the firms spent on the case relative to the total time expended to conclude it; (2) the quality of representation by each firm; (3) the viability of the claim at the time of the file's transfer; (4) the amount of recovery realized in the underlying lawsuit; and (5) any pre-existing partnership agreements. Although the dispute in LaMantia arose in the context

of a lawyer who left the first law firm and took the client's file with him, the same principles of fair compensation logically apply here. See also Ciecka v. Rosen, 908 F. Supp. 2d 545, 553 (D.N.J. 2012) (observing that under New Jersey law an attorney or law firm may bring an action for quantum meruit against an unrelated successor attorney or law firm for a portion of a contingency fee); Goldberger & Shinrod v. Baumgarten, 378 N.J. Super. 244, 251 (App. Div. 2005) (recognizing similar quantum meruit principles).

The second law firm maintains that it should not be a "guarantor" of the first law firm's fee, and that the legal work performed by the first law firm was merely "incidental" and thus non-compensable. The second law firm further argues that the first law firm's sole remedy is against the client, who has already paid the maximum fee allowed without court approval under the sliding scale of Rule 1:21-7.

We are not persuaded by these arguments. The second law firm was not being asked to "guarantee" the first law firm's fee; indeed, if the contingent case resulted in no recovery, then neither law firm would have earned a fee. The value of the first law firm's efforts — including obtaining the metal fragment as a critical piece of evidence — was not manifestly "incidental." The resolution of the reasonable value of the services implicates genuine issues of fact that should be resolved by the trial court

8

on a plenary basis and not through summary judgment. <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 540 (1995). Lastly, to the extent that the former client is found to be a necessary or indispensable party to the fee claim, she may be potentially added to the remand proceedings in the trial court's discretion.

We therefore vacate the summary judgment order and remand for the trial court's reconsideration of the first law firm's quantum meruit claim. On remand, either plaintiff or defendant may promptly file a motion for leave to add the client as a direct or third-party defendant. The client may interpose any defense she may wish to assert, including but not limited to laches and an argument that she should not have to sustain any further reduction of her recovery beyond the amount already deducted by the second law firm, and that the two law firms instead must divide the already-deducted fee between themselves.

Vacated and remanded. Before any further motions or pleadings are filed in the Law Division, the trial court shall conduct a case management conference within thirty days to plan the remand proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4862-15T1