796 A.2d 238

STARKEY, KELLY, BLANEY & WHITE, PLAINTIFF–RESPON-
DENT, v. ESTATE OF NANCY NICOLAYSEN, LISA GELBURD
AND SIGURD NICOLAYSEN, JR., DEFENDANTS–APPEL-
LANTS.

Argued January 28, 2002—Decided May 9, 2002.

*Joseph E. Murray* argued the cause for appellants (*Joseph E. Murray & Associates,* attorneys; *Mr. Murray* and *Jay B. Bohn,* on the briefs).

*Scott W. Kenneally* argued the cause for respondent (*Starkey, Kelly, Blaney & White,* attorneys).

*Daniel M. Waldman* argued the cause for *amicus curiae,* New Jersey State Bar Association (*Mr. Waldman,* attorney; *Catherine M. Brown,* on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

The primary issue presented in this appeal is whether an attorney, who enters into an oral contingency-fee agreement that is later deemed to be unenforceable because it was not reduced to

writing within a reasonable time, is entitled to collect either a fee or an award based on the principle of *quantum meruit* for services rendered before the contingency has occurred. The trial court and the Appellate Division held that the attorney is entitled to payment based on *quantum meruit* notwithstanding the fact that the contingency has not been satisfied. We agree and affirm.

I.

On April 5, 1984, Sigurd A. and Nancy Nicolaysen, husband and wife, entered into a written contract to sell their 113-acre farm to Chaim Melcer for $7,700 per acre for a total of $870,000. That sale was contingent on Melcer's ability to obtain preliminary subdivision approval and access to required utilities, including water and sewer, within one year. Eight months later Melcer assigned the contract to Henry Opatut. Opatut almost immediately sought to extend the time allowed for the various approvals. Unhappy with the Melcer–Opatut contract because of the per acre sales price and a growing distrust of Opatut's lawyer, the Nicolaysens in February 1985 contacted Charles E. Starkey, Esq., a partner at plaintiff law firm, Starkey, Kelly, Blaney & White.

The Nicolaysens informed Starkey at the outset that they could not afford to pay him on an hourly basis. Starkey replied that he would handle the matter on a contingent fee basis modeled after a typical condemnation action fee arrangement in which the fee usually was one-third of the excess received over the original condemnation offer. An oral retainer agreement was reached pursuant to which Starkey would provide services for a contingent-fee equal to one-third of the difference between the Melcer–Opatut contract price of $870,000 and any future sale price for the 113 acres.

The object of the retainer agreement was the termination of the Melcer–Opatut contract. Starkey not only succeeded in terminating that contract, but he also successfully defended against consolidated lawsuits for specific performance of that contract. The trial court's judgment denying specific performance was appealed.

During the pendency of that appeal, the Nicolaysens entered into a contract with Newman & Newman Builders & Developers, Inc. to sell the farm for $36,000 per acre for a total sum of $3,996,000, contingent on the Nicolaysens' success in the Melcer–Opatut appeal. Under the Newman contract, the Nicolaysens received a $200,000 deposit that was non-refundable. After receipt of that deposit, Starkey and the Nicolaysens reduced their oral contingent fee agreement to writing on November 13, 1987. In that written agreement, Starkey unilaterally reduced his fee under the oral agreement from one-third to twenty percent of the sales price differential. The written agreement, executed more than two-and-one-half years after Starkey commenced representing the Nicolaysens, provided, among other things, that the fee was equal to twenty percent of the $3,126,000 difference between the Melcer–Opatut contract price and the Newman contract price, or the difference between the Melcer–Opatut contract and "any other contract which is ultimately closed by you. No money would be due us if we were unsuccessful in obtaining a price higher than that offered by Opatut and, in any event, payments would be due us only as received by you." Sigurd Nicolaysen, Jr., one of the two co-executors named as defendants herein, was apprised of the written agreement and its terms by his father at the time the agreement was executed in November 1987.

If there had been a title closing under the Newman contract, the contingency fee would have amounted to $625,200. That transaction, however, never closed for a variety of reasons, including the lack of an available public sewer system and poor soil conditions that limited the use of septic systems. When Newman sought an extension due to those and other difficulties, the Nicolaysens decided to terminate the contract. Newman sued for specific performance and for the return of the $200,000 deposit. After a trial in August of 1989 and an appeal in the summer of 1990, both defended by Starkey, the trial and appellate courts ruled in favor of the Nicolaysens and permitted them to retain the deposit. Starkey declined the Nicolaysens' offer to pay a portion of his fee from the $200,000 received from Newman.

In addition, during the pendency of the Newman litigation Starkey assisted the Nicolaysens in seeking offers from other prospective buyers, including one for $4,300,000. That offer was withdrawn when the potential buyer refused to make non-refundable installment deposits. The record is otherwise uninformative concerning why the Nicolaysens were unable to sell the property before their deaths. Mr. Nicolaysen died in October 1992 after a long period of deteriorating health. In the spring of 1993, Mrs. Nicolaysen entered into a contract of sale with Calton Homer, but that sale never materialized. Mrs. Nicolaysen died of cancer in July 1994. At some point between the signing of the contingent fee agreement in November 1987 and Mr. Nicolaysen's death, the Nicolaysens gifted three acres of their farm to their son, Sigurd. Starkey agreed that those three acres would not be subject to the contingent fee agreement. At the request of Sigurd. Starkey also reviewed another developer's proposal to purchase the property for $1,000,000 in cash.

After making several unsuccessful attempts to confirm the contingent fee agreement with the two Nicolaysens children, Sigurd Jr. and Lisa Gelburd, Starkey initiated the present litigation on June 3, 1996. The complaint as amended was filed against the Estate of Nancy Nicolaysen, Lisa Gelburd and Sigurd Nicolaysen, Jr. as co-executors. The co-executors are devisees of the land in question under their mother's Last Will and Testament. The complaint sought reasonable compensation for legal services rendered pursuant to the written fee agreement, or in the alternative, based on *quantum meruit* and a lien against the property for the amount awarded. No relief was sought against the children individually or as heirs or devisees. While that litigation was pending, defendants entered into a contract of sale with Toll Brothers, Inc. for $2,000,000 in cash. That agreement was terminated by Toll Brothers on January 3, 1997 for reasons not made clear in the appellate record. The property had not been sold by the time final judgment was entered below.

The trial court held that the contingent fee agreement was unenforceable because it had not been reduced to writing within a "reasonable time," in violation of the *Rules of Professional Conduct (RPC)*. The court also held that Starkey "may be entitled to a *quantum meruit* recovery, but not at the present moment." It reasoned that "the contingency which triggers [the] plaintiff's right to recovery just [had not] occurred." Paragraph five of the court's final order provides: "The parties may try the issue of *quantum meruit* damages but no judgment establishing a lien may be entered until the property is sold."

The *quantum meruit* issue was tried approximately two years later before a different judge who ruled that Starkey was entitled to a fee of $115,712.50. That fee was calculated by multiplying an hourly rate by the number of hours worked. Judgment was entered against "the Estate of Nancy Nicolaysen, Lisa Gelburd and Sigurd Nicolaysen, Jr., jointly and severally." The court reasoned that given the "uncertainty of a sale of the property . . . [and the fact that the heirs] plainly benefited from Mr. Starkey's efforts, . . . the amount will be awarded as a judgment . . . against all defendants, jointly and severally, rather than to be recorded as a lien solely against the property." The Appellate Division affirmed essentially for the reasons expressed by the trial court. *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 340 *N.J.Super.* 104, 773 *A.*2d 1176 (2001). We granted defendants' petition for certification, 169 *N.J.* 608, 782 *A.*2d 426 (2001), and now modify and affirm.

## II.

The children as co-executors for the estate argue that allowing a *quantum meruit* recovery when the contingency fee agreement has been invalidated because of the failure of the attorney to abide by the *Rules of Professional Conduct* would circumvent those rules. They maintain that allowing *quantum meruit* recovery in this case would foster negligence and inattention to *RPC* 1.5(b).

## A.

RPC 1.5(b) states that a lawyer, who has not regularly represented a client, must communicate to the client in writing the basis or rate of his or her fee "before or within a reasonable time after commencing the representation." The rule regarding contingency fees further provides:

> A fee may be contingent on the outcome of the matter for which the service is rendered.... A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.
>
> [*RPC* 1.5(c).]

Here, the contingency fee agreement was invalidated because Starkey did not reduce it to writing for thirty-three months. The initial question, therefore, is whether that was within a reasonable time contemplated by *RPC* 1.5(b). The general rule of construction is that fee agreements between lawyers and clients will be construed against the lawyers. *Cohen v. Radio–Elecs. Officers Union,* 146 *N.J.* 140, 156, 679 *A.*2d 1188 (1996); *Vaccaro v. Estate of Gorovoy,* 303 *N.J.Super.* 201, 207, 696 *A.*2d 724 (App.Div.1997) (noting that attorneys cannot benefit from failure to comply with requirements of *RPC* 1.5 by enforcing an agreement that violates that rule). We are satisfied that execution of a written fee agreement thirty-three months after representation has commenced is not within a reasonable time as required by *RPC* 1.5(b).

## B.

Although the contingent fee agreement is unenforceable, we must determine whether Starkey is entitled to recover the reasonable value of his services under a *quantum meruit* theory. *See Cohen, supra,* 146 *N.J.* at 162–63, 679 *A.*2d 1188; *Glick v. Barclays De Zoete Wedd, Inc.,* 300 *N.J.Super.* 299, 313, 692 *A.*2d 1004 (App.Div.1997) (permitting *quantum meruit* recovery where attorney was retained and rendered services in good faith, but failed to obtain written fee agreement pursuant to *Rule* 1:21–7 or

*RPC* 1.5(c)). *Quantum meruit* is a form of quasi-contractual recovery and " 'rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.' " *Weichert Co. Realtors v. Ryan,* 128 *N.J.* 427, 437, 608 *A.*2d 280 (1992) (quoting *Callano v. Oakwood Park Homes Corp.,* 91 *N.J.Super.* 105, 108, 219 *A.*2d 332 (App.Div.1966)). "Courts generally allow recovery in *quasi*-contract when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust." *Ibid.*

■ To recover under a theory of *quantum meruit,* a plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Longo v. Shore & Reich, Ltd.,* 25 F.3d 94, 98 (2d Cir.1994) (internal quotations and citations omitted); *accord Weichert Co. Realtors, Ltd., supra,* 128 *N.J.* at 437–38, 608 *A.*2d 280. It is clear that the four-part test has been satisfied in this case because: (1) Starkey provided valuable legal services in good faith by first nullifying the Melcer–Opatut contract, then by successfully canceling the Newman contract and retaining the $200,000 deposit, and later by assisting the Nicolaysens in contracting with other potential buyers; (2) the Nicolaysens accepted his services; (3) there was an expectation of payment and receipt of compensation as demonstrated by both the oral and written fee agreements; and (4) the reasonable value of his services has been established in a trial.

■ "Where an attorney performs legal services for another at his request, but without any ... understanding as to the remuneration, the law implies a promise on the party who requested such services to pay a just and reasonable compensation." *Glick, supra,* 300 *N.J.Super.* at 310, 692 *A.*2d 1004. Similarly, in *In re Estate of Travarelli,* 283 *N.J.Super.* 431, 436–438, 440, 662 *A.*2d 572 (App.Div.1995), the Appellate Division permitted a *quantum meruit* recovery despite the law firm's failure to reduce its contingency fee agreement to writing as required by *Rule* 1:21–7 and

*RPC* 1.5(b) and (c). It would be incongruous to hold that an attorney who made no agreement can collect a fee but one who had an oral agreement and ultimately a written agreement cannot collect a fee even though both agreements were unenforceable. The *Restatement (Third) of the Law Governing Lawyers* supports plaintiff's *quantum meruit* claim:

> The law permits a lawyer who has not agreed on a fee to recover one.... Denying compensation would be unfair to the lawyer and a windfall to the client. Moreover, the parties might have agreed on compensation, but in a contract unenforceable because it does not meet an applicable legal standard[,] ... for example, because it is a contingent-fee contract but [it] is not in writing as a court rule requires. *Quantum meruit* recovery then provides compensation in circumstances in which it would be contrary to the parties' expectation to deprive the lawyer of all compensation.
>
> [*Restatement (Third) of the Law Governing Lawyers* § 39 cmt. b(i) (1998).]

The reason for the writing requirement is to avoid misunderstandings and to avoid fraud. *DeGraaff v. Fusco,* 282 *N.J.Super.* 315, 320, 660 *A.*2d 9 (App.Div.1995). "The very purpose of *RPC* 1.5(b) is to have the client ... know without question his or her financial responsibility, as well as to prevent ... overcharging." *Ibid.;* Kevin H. Michels, *New Jersey Attorney Ethics: The Law of New Jersey Lawyering* § 33:4–1, at 735 (2002) (stating that *RPC* 1.5(b) was imposed "[i]n the hope that early, written disclosure would reduce the likelihood of a fee dispute at a later date"). Here, invalidating the contingent fee agreement that was susceptible to misunderstanding because it was not reduced to writing within a reasonable time is a sufficient vindication of the Rule. There is not the slightest hint of fraud or bad faith by Starkey. Nor is there any suggestion of a misunderstanding by anyone. Although Starkey may have negligently failed to reduce the agreement to writing much sooner, the loss of a potentially substantial contingency fee, as well as the possibility of a professional disciplinary action, should provide .adequate incentive to lawyers similarly situated to take greater care in complying with the *Rules of Professional Conduct.*

## C.

■ Defendants also argue that Starkey reasonably could not have expected to be paid without the occurrence of the contingency—a sale. Their reliance on *LaMantia v. Durst*, 234 *N.J.Super.* 534, 561 *A.2d* 275 (App.Div.), *certif. denied*, 118 *N.J.* 181, 570 *A.2d* 950 (1989), is misplaced. That case involved the issue of how two law firms should split a contingency fee; it did not involve the question whether the client should pay. The primary rationale for not allowing recovery prior to the occurrence of the contract contingency is to avoid burdening the client's absolute right to change attorneys. But in this case it was the trial court's finding, supported by evidence in the record, that the contingency fee arrangement was a method of paying Starkey for services that he already had performed. Starkey was not retained primarily to find buyers and negotiate a sales contract. Rather, the primary purpose in retaining him was to invalidate the Melcer–Opatut contract in order that the property could be sold for a much higher price. Even if the children do not sell the property and thereby satisfy the contingency, they continue to benefit from Starkey's services by receiving enjoyment and use of the property as well as the right to sell it at what is likely to be a price higher than the $7,700 per acre price under the Melcer–Opatut contract. As the trial court aptly noted:

[B]oth of the heirs, through Mr. Starkey's efforts, inherited the entire parcel, to do with as they please, but which would have been lost to them had his efforts on their parents' behalf not succeeded. There is simply no evidence that Mr. Starkey's efforts have not in fact enriched these defendants. In this context, while it is true that the second contingency of the agreement Mr. Starkey made, namely the sale of the property at a price higher than the Melcer–Opatut contract, has not taken place, that contingency was and is solely within the control of the heirs. There is no evidence before this Court to demonstrate that the land is not marketable or that its value is any less than Newman was willing to pay in 1988, as a result of which the failure of the sale contingency is not a risk Mr. Starkey should bear.

## D.

■ The children individually argue that the judgment should not be against them. At oral argument, counsel for plaintiff

informed the Court that plaintiff does not object to the entry of judgment only against the estate, thereby creating a lien against the property. Given that stipulation, the nature of the pleadings and the evidence presented at trial, we agree that the judgment for counsel fees should be recoverable only from the assets of the estate. *N.J.S.A.* 3B:22–42; 7 *New Jersey Practice, Wills and Administration* § 1034, at 160 (Alfred C. Clapp & Dorothy G. Black) (rev.3d ed.1984). We, therefore, modify the judgment below so that it is not entered against the heirs but only against the estate. Because the judgment is a lien against realty, the lien immediately can be executed against the property to satisfy the counsel fee judgment. Plaintiff is not, however, permitted to collect more than it would have collected had the contingency agreement been enforceable. Under the agreement, Starkey would have collected twenty percent of any price in excess of the $870,000 Melcer–Opatut contract price. The *quantum meruit* fee of $115,712.50 awarded plaintiff, suggests that the trial court apparently was satisfied that the property had at that time a fair market value of at least $1,448,562.50 (representing $870,000 plus 5 × $115,712.50). We are satisfied that the fee is not more than that contemplated under the written agreement and affirm the trial court's award.

## III.

The judgment of the Appellate Division is affirmed as modified.

*For affirmance as modified*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, and LaVECCHIA—6.

*Opposed*—None.