**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0706-17

SUSAN LASK,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

ALBERT FLORENCE,

      Defendant-Respondent/
      Cross-Appellant,

and

CARL D. POPLAR, PA, CARL D.
POPLAR, WILLIAM A. RIBACK,
WILLIAM RIBACK, LLC, ALIX
SCHWARTZ,

      Defendants-Respondents.

_____

Argued December 2, 2020 – Decided  February 22, 2021

Before Judges Fuentes, Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1791-14.

Susan Lask, appellant/cross-respondent, argued the cause pro se (Jamie Goldman, on the briefs).

Carl D. Poplar argued the cause for respondent pro se Carl D. Poplar and respondent/cross-appellant Albert Florence (Carl D. Poplar, PA, attorneys; Carl D. Poplar, on the briefs).

Michael DeGrande argued the cause for respondents William A. Riback, William Riback, LLC and Alix Schwartz (Mintzer Sarowitz Zeris Ledva & Meyers, LLP, attorneys; John H. Maucher, on the brief).

PER CURIAM

Plaintiff Susan Lask appeals from numerous Law Division orders[1] up to and including the September 1, 2017, order denying reconsideration of an August 8, 2016, order dismissing her amended complaint against attorney defendants Carl D. Poplar, William A. Ribak, and Alix Schwartz; granting summary judgment for her former client, defendant Albert Florence; denying the recusal of the Law Division judge; and awarding Poplar costs under the frivolous litigation statute, N.J.S.A. 2A:15-59.1 (Rule 1:4-8). Defendant Florence cross-appeals the dismissal of his counterclaim and the denial of his

---

[1] Lask did not attach orders to her original notice of appeal or case information statement but improperly listed court dates, rather than orders, in a chart. She filed orders later, dated December 9, 2014, March 23, 2015, June 3, 2015, July 7, 2015, August 7, 2015, October 23, 2015, August 8, 2016, August 18, 2017, September 1, 2017, and September 1, 2017.

request for frivolous litigation sanctions. Poplar cross-appeals the denial of his request for attorney's fees. We affirm.

The underlying litigation arises out of a fee dispute between plaintiff Susan Lask and her former client, defendant Albert Florence. We discern the relevant factual and procedural history from the record.

In April 2005, Florence executed a retainer agreement with the law firm of Michael V. Calabro to represent Florence in a federal civil rights suit for damages arising from Florence's March 3, 2005, arrest. The agreement provided the firm would provide services, upon receipt of an initial retainer of $7000, and the balance of the case would be taken on a contingency basis of the higher of the following:

> Either (a) 40% of the net recovery, [n]et recovery is the total recovered on [y]our behalf, minus [y]our costs and expenses and minus any interest included in a judgment pursuant to [Rule] 4:42-11(B) or (b) [t]he [l]aw [f]irm's hourly rates, which are to be paid contingent on recovery.

The agreement enumerated, the hourly rates of Calabro and Lask, $375 and $500 respectively. Neither Lask nor Calabro signed the retainer agreement. Florence signed it during a meeting with Calabro and Lask.

On July 19, 2005, Calabro and Lask filed the civil rights complaint in the United States District Court for the District of New Jersey. In June 2006,

3

Calabro and Lask filed an amended complaint adding a class-action claim alleging Florence and other members of the class were subjected to unconstitutional strip searches after being arrested in New Jersey. The District Court granted Florence's class certification and motion for summary judgment on the unlawful search claim; however, the Third Circuit reversed the District Court's decision on the unlawful search claim in <u>Florence v. Board of Chosen Freeholders of Burlington</u>, 621 F.3d 296, 311 (3d Cir. 2010). The Supreme Court of the United States granted certiorari and in <u>Florence v. Bd. of Chosen Freeholders of Burlington</u>, 566 U.S. 318 (2012), affirmed the Third Circuit's decision.

Lask continued to represent Florence through settlement negotiations with Burlington and Essex counties on his remaining claims. Claims against Burlington County settled for $45,000, and on September 22, 2012, Lask emailed Florence a release memorializing the settlement. On that same day, Lask sent Florence an email that stated:

> We agree that appeal fees, including the Third Circuit and [Supreme Court of the United States] were $200,000 plus disbursements and the Burlington check of $45,000 will be paid in full to Susan Chana Lask as part of that fee, and any remaining settlement and/or payment from Essex shall be paid 60% to Susan Chana Lask and 40% to Albert Florence up to [o]ne [m]illion [d]ollars settlement, anything past that shall

4

be 60% to Albert and 40% to Susan. Any [d]isbursements outstanding shall be paid first from any future settlement and then the net shall be divided as aforementioned. This does not cover an appeal or any further motions or trial work which shall be renegotiated by the parties if Ms. Lask cannot reach settlement with Essex. Albert emailing back a reply "agreed" constitutes this as the amendment to the parties' retainer.

On October 5, 2012, Lask emailed Burlington County Counsel Brooks DiDonato, instructing the "check shall be payable to 'Albert Florence and Susan Chana Lask' without attorney or ESQ at the end as I do not have an account named like that." The check was electronically deposited into her business account.

On March 28, 2013, the Essex County claims settled for $60,000. Then Essex County Counsel James Paganelli confirmed the settlement and asked Lask for a release. On April 2, 2013, Lask emailed a release to Paganelli; however, Florence said he did not see or authorize that release, and his signature was fraudulently placed on the document. Florence testified that he was asked to meet with Lask regarding the Essex County settlement, but "he felt uncomfortable signing anything else with Ms. Lask." Florence stated he reached out to Calabro, who explained that "Ms. Lask should provide you with a disbursement sheet and itemization of her costs."

5

Florence retained Poplar to review the files regarding the Burlington County and Essex County matters. In April 2013, Poplar sent a letter to Lask requesting retainer agreements and financial information. Lask emailed Florence stating she received Poplar's letter and would be charging Florence her regular hourly rates for any work she was compelled to do from that letter onward. Florence advised Lask that she should contact Poplar to get the matter resolved.

In May 2013, Lask emailed Florence warning that "[i]f the voucher is not signed this week it will interfere with the settlement going through[,]" and Florence would be responsible for any loss. The email warned if Florence continued to "inject a lawyer, Mr. Poplar, to interfere with settlement[,] . . . [Lask] will proceed with an intentional interference with contractual relations action as well as other causes of action as [Poplar's] actions were irrelevant and annoying." Florence responded by requesting "an itemization of all cost[s], and disbursement and propose[d] disbursement[s] in the Essex County and Burlington County cases."

In November 2013, Lask filed a complaint in the Law Division in Essex County, alleging defendant Albert Florence and attorney defendants Carl D. Poplar, William A. Ribak, and Alix Schwartz were liable for malicious use of

6

process, breach of contract, unjust enrichment, quantum meruit, promissory estoppel, civil conspiracy, tortious interference with contract, libel per se, and exemplary damages. After defendants filed answers, Lask served defendants with deposition notices to appear on separate dates in February 2014. Poplar moved to dismiss plaintiff's complaint and quash the deposition notice. In January 2014, Riback, Schwartz and Florence also moved to dismiss pursuant to Rule 4:6-2(e) for failure to state a claim upon which relief can be granted.

Poplar moved to change venue pursuant to Rule 4:3-3 and served Lask interrogatories and a notice to produce documents. In February 2014, Lask moved to disqualify Riback as counsel to co-defendant Florence. Defendants Riback and Schwartz advised Lask they would not appear for the February depositions "until after the court decides the motions to dismiss as well as Mr. Poplar's motion to quash the [s]ubpoena . . . ."

In April 2014, the Essex County assignment judge transferred the case to Camden County. Shortly thereafter, Poplar moved to dismiss for Lask's failure to supply discovery—interrogatories—pursuant to Rule 4:23-5(a)(1). On July 18, 2014, the parties appeared before Judge Louis R. Meloni on Poplar's motion to dismiss, which Riback and Schwartz joined. Judge Meloni found dismissal inappropriate and ordered Lask to "provide fully responsive answers

A-0706-17

to interrogatories . . . within [f]ourteen . . . days of July 18, 2014, or August 1, 2014;" the court memorialized this in an order dated August 4, 2014.

On July 29, 2014, Poplar renewed his motion to dismiss Lask's amended complaint for failure to state a claim pursuant to Rule 4:6-2(e).  On August 5, 2014, Lask submitted a letter to Judge Meloni requesting a stay of the matter due to her medical conditions.  Judge Meloni sent a letter to the parties instructing Lask to refrain from engaging in ex parte communications and to provide documentation explaining how the condition prevents her from participating in the litigation.

On October 31, 2014, the parties appeared before Judge Meloni for a hearing on the outstanding motions.  Judge Meloni granted Florence's motion for leave to file a counterclaim against plaintiff and a third-party complaint against Calabro and dismissed Lask's complaints with the exception of the tortious interference and libel per se counts.

Judge Meloni also denied: (1) Poplar's motion to dismiss plaintiff's complaint, pursuant to Rule 4:23-5; (2) Poplar's motion to quash plaintiff's deposition notices; (3) plaintiff's cross-motion to disqualify Riback and William Riback, LLC; and (4) plaintiff's cross-motion to compel defendant's

8

depositions and extend the discovery date. On December 9, 2014, the court issued orders memorializing its October 31, 2014, decision.

The court also issued a case management order that outlined the next steps of the litigation. Lask was given forty-five days to respond to the initial interrogatories, and production of document requests and depositions of the parties were to take place within 100 days.

Additional interrogatories were sent to Lask to be answered within the initial forty-five-day time frame. On December 15, 2014, Florence filed a counterclaim against Lask and a third-party complaint against Calabro.

On January 26, 2015, the court conducted a hearing; Lask did not appear. Accordingly, on the same day, Judge Meloni issued an order compelling Lask to answer defendants' second set of interrogatories within twenty days. On May 29, 2015, the parties appeared before Judge Meloni for a hearing on multiple outstanding motions. There, Judge Meloni found the interrogatories submitted by plaintiff to be insufficient and stated:

> Ms. Lask had asked me what I thought was wrong with her interrogatory answers or how they were non-responsive.
>
> . . . .
>
> I don't think it's adequate, first of all, to answer on behalf of, or to respond to these question[s],

9

alleging that all the defendants did the same thing. The specific charges are against . . . these individual defendants. They have to be apprised of what they're individually accused of.

. . . .

And, . . . the rest of it appears to be conclusionary to me. So that's why I don't think that they are sufficient answers to these interrogatories. And I think that the defendants are entitled to that.

Based on that finding, Judge Meloni dismissed plaintiff's complaint without prejudice and gave Lask ninety days to provide fully responsive answers and move to reinstate the complaint. The judge issued an order memorializing his decision on June 3, 2015. The order also provided that Lask was to appear for a deposition on issues limited to the counterclaim on July 10, 2015.

Two days before the scheduled deposition, Lask moved for an order "[r]ecusing Judge Meloni and staying th[e] matter during that motion." Although the proceedings were not stayed, Lask did not appear for the deposition.

On August 7, 2015, the parties appeared for a hearing on the motion for recusal.[2] Judge Meloni found plaintiff's arguments lacked merit; nevertheless, he recused himself pursuant to Rule 1:12(g), stating: "I find that the attacks

---

[2] Lask appeared by telephone.

10

made against my integrity and my character, both on the record and in the submissions, are so offensive and unjustified that I fear that going forward they may preclude a fair and unbiased hearing and judgment in this matter."

On September 1, 2015, Lask moved for an order "vacating, reinstating or reconsidering the [c]ourt's [o]rder dated June 3, 2015 . . . ." On October 21, 2015, Lask filed a motion to transfer venue to Bergen County. Lask also wrote a letter to Assignment Judge Deborah Silverman Katz requesting the matter be stayed until the motion to transfer venue was heard.

On October 23, 2015, the parties appeared before Judge Anthony M. Pugliese to address Lask's request for the stay. Judge Pugliese denied the request, explaining there was nothing in the record demonstrating the judge's inability to be impartial or inability to give a fair hearing.

After the hearing, Judge Pugliese dismissed Lask's complaint against Riback and Schwartz with prejudice because Lask still failed to provide full and complete answers to discovery in compliance with the court's June 3, 2015, order, nor did she appear for her deposition on December 11, 2015. The court also confirmed the dismissal of all claims against Poplar.

Florence and Lask each filed motions to dismiss and for summary judgment on the remaining claims. On August 8, 2016, the parties appeared

11

before Judge Pugliese, who dismissed Lask's complaint as to Florence with prejudice, and granted summary judgment on counts two and three of Florence's counterclaim. The judge found Lask's libel per se, civil conspiracy, quantum meruit, promissory estoppel, and unjust enrichment claims as well as her claims for exemplary damages were not sufficiently pled as to provide facts "upon which a [c]ourt can draw any inferences that they are in play."

As to Lask's purported contract, Judge Pugliese explained, "to be enforceable, contracts between attorneys and clients must satisfy both contract requirements and ethical requirements." He found Lask's September 22, 2012, email "fails on numerous points." Judge Pugliese stated:

> First, it doesn't account for the $7000 that was previously paid by Mr. Florence. Second, it doesn't account for the money paid by the defendant for any discovery, whether it's deemed to be class-wide discovery or discovery on his own individual claim.
>
> [T]hirdly . . . it wasn't signed by Calabro, who's the only attorney that was a party to the original . . . April of 2005 agreement that it purports to amend according to the language of the e-mail itself, as I had previously explained.
>
> It does not detail or identify any of the outstanding disbursements. And, in that regard, Ms. Lask never provided financial information on the costs or expenses regarding the Florence record, no record of how Mr. Florence's $7000 was paid, or what payments he made, whether on his own for his own

12

case or for the class with respect to depositions cost after the point in time of June 30, 2006, which is when the suit amended to a class action.

. . . .

It gives no breakdown of this quote, unquote, significant substantial fee, as it was stated, of $200,000 plus disbursements for appeals. It doesn't address fairness in establishing the fee. It appears to infer that the defendant's choice is either pay $200,000 or more or pay the $45,000 that's from the Burlington County settlement and 60 percent of any future settlement.

It's not ethical to leverage a client in this manner to say if you don't pay me now, you're going to owe me a lot more later. That's not an appropriate fiduciary responsible manner under our laws.

The e-mail is not a comprehensive agreement taking into account the fiduciary obligations to the client. It would violate [RPC (Rules of Professional Conduct) 1.5(b)] because there's no basis or rate of fee communicated in the e-mail before commencing representation. This is happening years later. [RPC 1.5(b)] requires that it happen at the inception.

As to the fee distribution of the settlement money, $105,000, Judge Pugliese found Florence had an expectation, from the August 2005 agreement, that "after costs, he would have to pay [forty] percent" of the settlement. He ordered Florence was to receive $9000 in reimbursement for costs and $57,000, his 60% share of the net settlement proceeds after his cost

13

reimbursement.  Judge Pugliese also ordered the remainder of the net settlement proceeds, $38,400, to be owed by Florence as a fee, but made "no ruling as to who is entitled to that fee as [d]efendant Michael Calabro was dismissed from this case by stipulation . . . ."  The judge also noted that the fraud claims filed against Lask would be litigated.

Between March 29 and April 4, 2017, Florence and Lask appeared before Judge Pugliese for a trial on what remained of Florence's counterclaim.  At the conclusion of the parties' arguments, the court found Florence failed to establish the damages prong of his fraud claim and granted Lask's motion for dismissal.

In May 2017, Florence filed a motion for frivolous litigation damages pursuant to N.J.S.A. 2A:15-59.1 and Rule 1:4-8.  On June 9, 2017, Florence also filed a motion for fees and costs as a result of Susan Lask's "misconduct."

Lask filed a motion under Rules 4:42-2, 1:7-4(b), and 4:50 for reconsideration and correction regarding the August 8, 2016, order.  She also moved to recuse Judge Pugliese and asked to stay the matter.  Lask asserted Judge Pugliese made certain comments, which, "under the appearance of bias standard, a reasonably objective person would conclude that there's an appearance of bias."  Judge Pugliese denied Lask's motion.

A-0706-17

Thereafter, on September 1, 2017, the court heard argument on Poplar's and Florence's motions for sanctions and Lask's motion for reconsideration of the August 8, 2016, order, which allocated the $105,000. The court denied the motion for reconsideration and determined Poplar was not entitled to frivolous litigation attorney fees pursuant to Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510 (App. Div. 2009). Instead, the court found Poplar was entitled to costs in the amount of $7,265.72. The court also found that Florence was not entitled to attorney fees because there was some ambiguity regarding the contract dispute. This appeal followed.

I.

On appeal, Lask argues the trial court: (1) abused its discretion by dismissing her complaint with prejudice as the court did not enforce Rule 4:23-5's mandates and did not apply the proper analysis; (2) erred in granting summary judgment because Florence's motion was improper as it lacked a statement of facts and there was sufficient evidence in the record to raise a genuine issue of material fact as to whether she was entitled to relief under quantum meruit; (3) erred in finding Judge Pugliese's recusal was not required under Rule 1:12-1(g); and (4) erred in awarding Poplar costs. Lask also argues Florence's counterclaim should have been dismissed as Florence failed to plead

the damages element of fraud, provide an affidavit of merit, and unlawfully dismissed an indispensable party, Calabro.

Lask argues the trial court abused its discretion by dismissing her complaint with prejudice because the defendants' Rule 4:23-5 motions omitted the requisite affidavits and were not rational. She also contends the court ignored Rule 4:23-5's two-step process that first mandates a party to file an affidavit which states the movant is not in default of any discovery obligation owed to the delinquent party and that the moving party made a good faith effort to resolve the dispute. She further asserts the court failed to acknowledge that there was no basis to dismiss under the rule because she provided answers that prevented dismissal. Lastly, Lask contends the court improperly held that the law of the case doctrine supported a dismissal with prejudice.

We find this argument unpersuasive because, based on our review of the record, Lask's complaint was not dismissed pursuant to Rule 4:23-5. All the counts of her complaint, with the exception of the tortious interference and libel counts, were dismissed for failure to state a claim upon which relief could be granted. With respect to the libel and tortious interference counts, we view the court's action as an imposition of the sanction of dismissal pursuant to Rule

16

4:23-2(b)(3) in response to Lask's failure to comply with its June 3, 2015, court order.[3]

"[T]he standard of review for dismissal of a complaint with prejudice for discovery misconduct is whether the trial court abused its discretion, a standard that cautions appellate courts not to interfere unless an injustice appears to have been done." Abtrax Pharms. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995). Courts are deemed to have abused their discretion when the "decision [was] made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." United States ex rel. U.S. Dept. of Agric. v. Scurry, 193 N.J. 492, 504 (2008).

"Discovery rules are designed to 'further the public policies of expeditious handling of cases, avoiding stale evidence, and providing uniformity, predictability and security in the conduct of litigation.'" Abtrax Pharms., 139 N.J. at 512. "The discovery rules were designed to eliminate, as

---

[3] The trial court did not explicitly reference Rule 4:23-2(b)(3). However, at the October 23, 2015, hearing, the judge, in response to Lask's assertion that "we're arguing a 4:23-5," stated: "that's not what we're arguing, we're arguing about whether you complied with the judge's order of June of 2015." The October 23, 2015, order also stated: "Plaintiff's complaint is hereby dismissed with prejudice, as to defendants William Riback, LLC, William Riback, Esquire and Alix Schwartz, Esquire, for failure to provide full and complete answers [to] discovery in compliance with the [c]ourt's [o]rder of June 3, 2015 and for failure to comply with a [c]ourt [o]rder."

far as possible, concealment and surprise in the trial of lawsuits to the end that judgments rest upon real merits of the causes and not upon the skill and maneuvering of counsel." Ibid. (quoting Oliviero v. Porter Hayden Co., 241 N.J. Super. 381, 387 (App. Div. 1990)). "It necessarily follows, if such rules are to be effective, that the courts impose appropriate sanctions for violations thereof." Oliviero, 241 N.J. Super. at 387 (citing Evtush v. Hudson Bus Transp. Co., 7 N.J. 167, 173 (1951)).

As a means of furthering the rules of discovery, courts are afforded the option to dismiss a case with prejudice under both Rule 4:23-5 and Rule 4:23-2. Rule 4:23-5 allows a party entitled to discovery to move for an order dismissing the pleading of a delinquent party who fails to comply with a discovery demand made pursuant to Rule 4:17, Rule 4:18, or Rule 4:19. "The rule imposes a duty on the motion judge 'to take action to obtain compliance with the requirements of the rule.'" Thabo v. Z Transp., 452 N.J. Super. 359, 369 (App. Div. 2017) (quoting A&M Farm & Garden Ctr. v. Am. Sprinkler Mech. L.L.C., 423 N.J. Super. 528, 532 (App. Div. 2012)). "Rule 4:23-5 codified a two-step procedural paradigm that must be strictly-adhered to before the sanction of dismissal of a complaint with prejudice for failing to answer interrogatories or provide other discovery can be imposed." Ibid.

However, Rule 4:23-2(b) allows for a dismissal "with or without prejudice" in response to a party's failure to comply with an order to provide discovery:

> If a party . . . fails to obey an order to provide or permit discovery, including an order made under R. 4:23-1, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the introduction of designated matters in evidence;
>
> (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof with or without prejudice, or rendering a judgment by default against the disobedient party;
>
> (4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders.
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure,

19

> unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
>
> [R. 4:23-2(b).]

In situations where dismissal is one of the options available, courts must "carefully weigh what sanction is the appropriate one, choosing the approach that imposes a sanction consistent with fundamental fairness to both parties." Robertet Flavors, Inc. v. Tri-Form Constr., Inc., 203 N.J. 252, 282-83 (2010). Although courts should generally refrain from resorting to dismissal with prejudice when there are other remedies available, "[a] litigant who willfully violates" one of our fundamental precepts of our trial practice "should not assume that the right to an adjudication on the merits of its claims will survive so blatant an infraction." Abtrax Pharms., 139 N.J. at 521. When determining whether dismissal is appropriate, courts "should assess the facts, including the willfulness of the violation, the ability of plaintiff to produce the certification, the proximity of trial, and prejudice to the adversary, and apply the appropriate remedy." Casinelli v. Manglapus, 181 N.J. 354, 365 (2004).

We have endorsed this extreme sanction in situations where a party deliberately pursues a course that hinders the ability to obtain necessary facts. See Crews v. Garmoney, 141 N.J. Super. 93, 96-97 (App. Div. 1976);

<u>Interchemical Corp. v. Uncas Printing & Finishing Co.</u>, 39 N.J. Super. 318, 321 (App. Div. 1956).

Like in <u>Crews</u> and <u>Interchemical Corp.</u>, where a party's conduct during discovery prevented its adversary from obtaining necessary facts and we found the sanction of dismissal was warranted, Lask's conduct here caused undue delay and prevented the court and attorney defendants from acquiring the necessary facts to understand the basis of her claims.

By the time Judge Pugliese was managing the case, based on his review of the record, he found Lask was apprised of the reasons for Judge Meloni's rulings and determined he was not going to vacate or reconsider the order, telling Lask "[t]here was nothing, no new law, no new facts, set forth in your pleading. And you don't meet any one of the delineated reasons in the rule to vacate that would grant that relief."

Judge Pugliese provided Lask with the opportunity to convince him that she complied with Judge Meloni's order and asked whether she "[s]et forth specifically what each defendant said" to establish the elements of her libel claims. Lask responded: "Yes I tell you in my motion papers and in my opposition that . . . all I have to do is just resubmit my same discovery" and "[m]y motion says refer to what I already filed. I can't answer any different

21

way than what I already filed." Ultimately, Judge Pugliese, by operation of the June 3, 2015, order, dismissed the case, finding:

> that on at least four occasions, you were given an opportunity to comply with discovery and you didn't.
>
> And the last order was June 3rd, 2015, and instead of responding to what I believe were Judge Meloni's clear instructions as to what was required of you, the [eighteen] requests and the six interrogatories; and then specifically, he particularly identified interrogatories 23, 24, and 32 as being non-responsive, that those responses haven't been served within the time required, which would have been September 1st.

Based on our review of the foregoing, the trial court did not abuse its discretion in finding that Lask's noncompliance with several court orders justified the sanction of dismissal. Since January 24, 2014, when Lask was served with the initial interrogatories, the court explained on numerous occasions the reasons that Lask's answers were deficient and offered various opportunities for Lask to present the necessary information providing the basis of her claims. The record demonstrates Lask undertook a course to delay the proceedings, and when she did provide answers, they were either unresponsive or deficient. Even when her complaint was dismissed without prejudice and she was afforded ninety days to provide fully responsive answers and move to reinstate her complaint, Lask did not comply with the order but rather

22

responded to the court's request by essentially stating that it should refer to what was already submitted. The record contains ample support for the conclusion that Lask invited the extreme sanction through a course she pursued in light of both the court's and defendants' efforts to obtain the necessary facts.[4]

We also reject Lask's contention Florence's counterclaim should have been dismissed because, as required by <u>Levinson v. D'Alfonso & Stein</u>, 320 N.J. Super. 312 (App. Div. 1999) (discussing N.J.S.A. 2A:53A-27), Florence was required to file an Affidavit of Merit indicating that the practices that were the subject of the complaint fell outside the acceptable professional standards. Lask argues that while Florence insists that he is alleging fraud, his claims are actually "negligence-professional malpractice allegations." They were not.

The affidavit of merit statute did not apply here because Florence's claim did not require proof of a deviation from the professional standard, and therefore Florence's fraud claim does not require an assessment of the

---

[4] Even assuming that this were a <u>Rule</u> 4:23-5 motion, and that plaintiff failed to comply with the two-step procedural paradigm, Lask's statement that she "can't answer any different way than what I already filed" precludes her from relief as she may have failed to provide a claim upon which relief could be granted. <u>R.</u> 4:6-2(e).

<span>A-0706-17</span>

professional standard. Stated differently, this does not appear to be a malpractice claim or professional negligence dressed as a fraud claim.

Finally, Lask argues the trial court erred in finding that quantum meruit does not apply if a party fails to submit a bill or have a written retainer. She asserts the court committed plain error by ignoring her eight years of service to Florence. Lask also argues Florence's summary judgment motion should have been denied as his motion failed to include a statement of material facts pursuant to Rule 4:46-2. Lask also contends the court erred by denying her motion for reconsideration as the court failed to recite the proofs it relied on in directing her to pay $2000 to Florence, and it was punitive to order her to pay money she never received.

Although Florence's motion for summary judgment did not comply with the requirements of Rule 4:46-2 because it lacked the necessary statement of material facts, summary judgment was still ripe for review because the material facts—two settlements totaling $105,000 and no attorney fee agreement—were not disputed. Compare Lyons v. Township of Wayne, 185 N.J. 426, 435-37 (2005) (finding the court was unable to conclude that there was no genuine issue as to any material fact because the movant failed to comply with the requirements of Rule 4:46-2(a)) with Kenney v. Meadowview

24

Nursing and Convalescent Ctr., 308 N.J. Super. 565, 569-70 (App. Div. 1998) (finding that although neither party fully complied with Rule 4:46-2, summary judgment was still ripe as the material facts were not disputed). Moreover, Florence submitted his counter statement of material facts in response to Lask's cross-motion for summary judgment.

Finally, Lask contends the trial court committed plain error when it rejected her quantum meruit claim because she failed to submit a bill or have a written retainer. Since Lask concedes she was not a party to the April 2005 agreement, we focus on her September 22, 2012, email.

"It is well-established that '[a] lawyer is required to maintain the highest professional and ethical standards in his [or her] dealings with [their] clients.'" Alpert, 410 N.J. Super. at 529 (quoting In re Humen, 123 N.J. 289, 299-300 (1991)). "In light of the unique and special relationship between an attorney and a client, ordinary contract principles governing agreements between parties must give way to . . . higher ethical and professional standards . . . ." Cohen v. Radio-Elecs. Officers Union, 275 N.J. Super. 241, 259 (App. Div. 1994), modified, 146 N.J. 140 (1986).

"Because lawyers stand in a fiduciary relationship with their clients, they must act fairly in all their dealings with them." Balducci v. Cige, 240 N.J.

574, 592 (2020). "Fee agreements that contravene the Rules of Professional Conduct [(RPC)] and public policy are not enforceable." Ibid. (citing Tax Auth., Inc. v. Jackson Hewitt, Inc., 187 N.J. 4, 15 (2006)).

When contracting for a fee, a "lawyer must explain at the outset the basis and rate of the fee the lawyer intends to charge." Alpert, 410 N.J. Super. at 530. That requirement is detailed in RPC 1.5(b), which provides that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated in writing to the client before or within a reasonable time after commencing the representation." The interpretation of a contract is a question of law which we review de novo. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).

The trial court found the September 22, 2012, email failed as a comprehensive agreement because, among other things, it violated RPC 1.5(b) as there was no basis or rate of fee communicated in the email before commencing representation. The court also noted this email was not sent at the inception of the litigation but rather years later. Applying the principles enumerated above, the trial court did not err in finding the 2012 email violated RPC 1.5(b). Certainly, even ignoring the email's other deficiencies, the execution of the agreement approximately eight years after representation

26

commenced is not within a reasonable time as required by RPC 1.5(b). See Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60, 67 (2002) (finding the execution of a fee agreement thirty-three months after representation has commenced is not within a reasonable time as required by RPC 1.5(b)). Moreover, Lask's argument that RPC 1.5(b) did not apply because she represented Florence for over eight years is untenable, as the record is bereft of any facts demonstrating that Lask had represented Florence in any matter prior to the one from which this case stems.

Without an enforceable agreement, we consider whether Lask is entitled to revive her quantum meruit theory that was dismissed as a result of her failure to provide discovery. Quantum meruit is a quasi-contractual form of recovery which "'rests on the equitable principle that a person shall not be allowed to enrich [themselves] unjustly at the expense of another.'" Starkey, 172 N.J. at 68 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437 (1992)). "Courts generally allow recovery in quasi-contract when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust." Ibid. (quoting Weichert, 128 N.J. at 437). To establish a quantum meruit claim, a plaintiff must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the

person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Ibid. (quoting Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994) (internal quotations and citations omitted)).

In Estate of Pinter by Pinter v. McGee, 293 N.J. Super. 119, 128 (App. Div. 1996) we held that a law firm's failure to memorialize its contingent fee arrangement, therefore violating Rule 1:21-7 and RPC 1.5(c), precluded the firm from recovering on a theory of quantum meruit. In that case, a law firm was retained to handle a negligence and wrongful death action; however, there was no written retainer agreement. Id. at 121-22. An attorney who worked on the case left the firm and took the case with him. Id. at 122. After the case settled, a dispute arose regarding fees: the original firm argued it had an oral agreement with the client that the case would be taken on a discounted contingent basis, whereas the attorney who took the case stated the case was accepted on a no-fee basis. Id. at 122-23. The trial court denied the original firm any recovery because of its failure to obtain an executed fee agreement. Id. at 124. We affirmed, holding that "[w]hile quantum meruit recoveries by law firms have been permitted by our courts, they do not involve circumstances in which the [r]ules have been violated." Id. at 126-27.

Subsequently, in <u>Glick v. Barclays De Zoete Wedd, Inc.</u>, 300 N.J. Super. 299, 312 (App. Div. 1997), we acknowledged our decision in <u>Pinter</u> was at odds with two of our other decisions, <u>La Mantia v. Durst</u>, 234 N.J. Super. 534 (App. Div. 1989) and <u>In Re Estate of Travarelli</u>, 283 N.J. Super. 431 (App. Div. 1995). In <u>Glick</u>, we considered it "too harsh a result to deny all compensation to an attorney who was retained and rendered services in good faith based solely on a failure to obtain a written fee agreement in conformity with <u>R.</u> 1:21-7 (or RPC 1.5(c)) where no wrongful or unethical conduct is found to exist." <u>Id.</u> at 313.

There, we also explained that under a quantum meruit theory "the crucial factor in determining the amount of recovery is the contribution which the lawyer made to advancing the client's cause," and suggested possible outcomes regarding quantum meruit fee disputes between attorneys. <u>Id.</u> at 310-11.

More recently, in <u>Starkey</u>, 172 N.J. at 62-63, our Supreme Court was tasked to determine whether an attorney who enters into an oral contingency-fee agreement, which is later deemed unenforceable because it was not reduced to a writing within a reasonable amount of time, is entitled to recover a fee under the principle of quantum meruit. There, the Court explained that the purpose of RPC 1.5(b)'s writing requirement is to avoid misunderstanding and

29

fraud, apprise the client of their financial responsibility, as well as to prevent overcharging. Id. at 69. The Court found that although invalidating the contingent fee agreement was a sufficient vindication of RPC 1.5(b), there was "not the slightest hint of fraud or bad faith" by that attorney, and no suggestion of a misunderstanding by anyone. Ibid. Ultimately, the Court held the attorney was entitled to payment based on quantum meruit and noted "the loss of a potentially substantial contingency fee, as well as the possibility of a professional disciplinary action, should provide adequate incentive to lawyers similarly situated to take greater care in complying with the [RPC]." Ibid.

At the August 8, 2016, hearing the trial court here stated:

> As to quantum meruit, promissory estoppel, and unjust enrichment, as well []as exemplary . . . damages, to the extent that they are claims for damages, there . . . are no facts pled upon which a [c]ourt can draw any inferences that they are in play. And, with respect to . . . quantum meruit or unjust enrichment for that matter is not going to breathe life into an attorney's claim for a fee in this state with respect to our ethical rules because . . . there must be a contract . . . in a fee relationship such as this for that . . . to occur, and there just is not.

Our review of the record and the complaint supports the trial court's determination. Moreover, Lask's complaint was dismissed because she provided no sufficient discovery to support her claims and did not establish her

30

quantum meruit claim by supplying evidence of time sheets or other records of services provided.

We also reject Lask's argument that Judge Pugliese should have recused himself. After reviewing the record, we are satisfied that the judge's remarks, in the context of the proceedings, do not provide an "objectively reasonable belief that the proceedings were unfair." DeNike v. Cupo, 196 N.J. 502, 517 (2008) (internal quotation marks and citations omitted). Even assuming Judge Pugliese's statements, taken in isolation, had the potential to appear to have had some impact on his ability to be impartial, that concern was allayed by his decision to dismiss Florence's counterclaim after the judge made those statements. Therefore, the judge's comments did not serve as a valid basis for recusal.

II.

In his cross-appeal, Florence argues that while the trial court was correct in awarding him $7,265.72 in costs, this court should modify, under the circumstances of this case, our decision in Alpert, 410 N.J. Super. at 547, so that he can also be afforded frivolous litigation attorney fees. Florence also

31

argues the trial court erred in not awarding him relief under the frivolous litigation statutes.[5]

We review a trial court's impositions of frivolous litigation fees for an abuse of discretion. <u>McDaniel v. Man Wai Lee</u>, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted only in situations where the decision "was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing <u>Flagg v. Essex Cty. Prosecutor</u>, 171 N.J. 561, 571 (2002)).

N.J.S.A. 2A:15-59.1(a)(1) allows a party who prevails in a civil action to seek reasonable litigation costs and reasonable attorney fees "if the judge finds that at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the non-prevailing person was frivolous." N.J.S.A. 2A:15-59.1(a)(1).

---

[5]  Florence's argument for relief under the frivolous litigation statutes is unpersuasive and warrants little discussion. The trial court correctly found that Lask's claims against Florence, which largely stemmed from contractual issues surrounding her entitlement to a fee, were not frivolous. Imposing a sanction based on those claims would impermissibly favor cost-avoidance over access to the courts. <u>Gooch v. Choice Entertaining Corp.</u>, 355 N.J. Super. 14, 18 (App. Div. 2002).

A-0706-17

Rule 1:4-8 implements the frivolous litigation statute, and provides that an attorney's or pro se party's signature on a "pleading, written motion, or other paper" certifies that:

> to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) the paper is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the factual allegations have evidentiary support, or as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support; and
>
> (4) the denials of factual allegations are warranted on the evidence or, as to specifically identified denials, they are reasonably based on a lack of information or belief or they will be withdrawn or corrected if a reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support.
>
> [R. 1:4-8(a).]

33

This provision also "prescribes the procedure for seeking sanctions against an attorney or pro se party who files a frivolous 'pleading, written motion, or other paper.'" Toll Bros., Inc. v. Township of West Windsor, 190 N.J. 61, 69 (2007) (citing R. 1:4-8(b)).

Here, the trial court found that Lask's claims against Poplar were frivolous and ordered all of Poplar's costs reimbursed. In doing so, the court stated:

> Dismissals were had against Ms. Lask relative to the claims against the attorney/defendants on the basis that there [were] refusals of a response to particular discovery in those regards, but in some cases based on a lack of evidence being presented by Ms. Lask as to those claims.
>
> Relative to the claims had against Mr. Poplar, it's apparent to the [c]ourt that Ms. Lask knew or should have known that the claims against Mr. Poplar . . . were without any reasonable basis in either law or equity. The [c]ourt gave multiple opportunities to Ms. Lask to submit evidence especially regarding allegations of tortious interference and [libel] and to refuse to respond to this [c]ourt.
>
> And this [c]ourt is of the opinion that she knew at the outset that when the allegations were made that she would not be able to support them with evidence. And I say that because not just me . . . but the prior judge on this case gave

34

her a multitude of opportunities to present evidence and gave her multiple extensions to put forward more than just an assertion in the [c]omplaint, but to put forward and add some teeth to her case and her assertions and her allegations and she didn't do it.

. . . .

And I do find that these actions were frivolous. And let me state again. The frivolity is based on the fact that she knew or should have known that she had no evidence whatsoever to present to back up these contentions beyond the assertions that were made in that [c]omplaint. And when tasked to present evidence in the matter, she was unable to do so.

[I]n essence, I continued to grant extensions for Ms. Lask to provide evidence. It seemed to me at some point . . . I was, in essence, attempting to draw it out of her, to give her enough time that there would be no question that if she had evidence that she would have had sufficient time to provide it to the [c]ourt which, you know, as I look back at it now, leads the [c]ourt to conclude that she never had or intended to produce it. And that much of this was just a charade, was just in bad faith. And I need to place that on the record because that is part of the [c]ourt's ruling and reasoning in terms of assessing the award of costs and expenses to Mr. Poplar.

The court also highlighted that Lask, as well as her various attorneys throughout the litigation, received various safe harbor letters from Poplar.

35

However, despite the frivolous litigation letters being sent, Lask did not withdraw her complaint.

Based on the foregoing, the trial court did not abuse its discretion in finding that Lask knew, or should have known, that her complaint lacked any reasonable basis in law or equity and that Lask acted in bad faith by unduly delaying the course of the litigation.

We reject Poplar's argument that our decision in Alpert, 410 N.J. Super. at 547, should be modified under the circumstances of this case to afford Poplar, who appeared pro se, frivolous litigation attorney fee sanctions. There, we said "an attorney appearing pro se is not entitled to fees unless they are actually incurred as opposed to imputed." Id.

### III.

On cross-appeal, Florence argues the trial court erred in dismissing his counterclaim on the basis of the economic loss doctrine. Florence contends the economic loss doctrine is not applicable to this claim as this was not a business contract dispute but rather, Lask's purported contract was an instrument of fraud.

To prevail on a common law fraud claim, Florence must show that Lask: "(1) made a representation or omission of a material fact; (2) with knowledge

A-0706-17

of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) [he] suffered damages." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 336 (App. Div. 2013). Florence must prove each element by "clear and convincing evidence." Ibid.

As the trial court noted, Florence did not put forth any testimony concerning what funds he was deprived of, and only pointed to monetary damages for which he already received a remedy from the court.

None of the additional arguments raised by the parties have sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0706-17