**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2958-22

DR. LUDMILLA MECAJ,

      Plaintiff-Appellant,

v.

SUSSEX COUNTY
COMMUNITY COLLEGE,

      Defendant-Respondent.

_____

DR. LUDMILLA MECAJ,

      Plaintiff,

v.

SUSSEX COUNTY
COMMUNITY COLLEGE,
PRESIDENT JON CONNOLLY,
DR. KATHLEEN OKAY,
KETAN GANDHI, AND
JUMANA HABLAWI,

      Defendants.

_____

Submitted October 22, 2024 – Decided December 26, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0278-19.

Weisberg Law, attorneys for appellant (Matthew B. Weisberg, on the briefs).

The Busch Law Group, LLC, attorneys for respondent (Alyssa K. Weinstein, of counsel and on the brief).

PER CURIAM

Plaintiff Ludmila Mecaj appeals from a trial court order granting summary judgment to defendants and dismissing her claims for quantum meruit and unjust enrichment. After our de novo review, we conclude Judge David A. Weaver correctly determined plaintiff presented no genuine issues of material fact requiring a jury determination of her claims and, therefore, we affirm.

I.

The salient facts in this appeal are substantially undisputed. Plaintiff was an adjunct anatomy and physiology professor at defendant Sussex County Community College (SCCC) from 2012 to 2019, employed under a series of semesterly contracts. Defendant Dr. Jon Connolly was SCCC's President during this time. Defendant Dr. Kathleen Okay worked for SCCC in various Vice President and Dean positions since 1998. Defendant Ketan Gandhi was

employed by SCCC as Vice President/Executive Vice President of Finance and Administration from May 2017 through March 2022, and thereafter consulted for the college.

Plaintiff is a native to Albania, where she was a licensed physician. In addition to teaching classes, SCCC permitted her to recruit foreign students from Albania to attend SCCC. Plaintiff took her first "recruiting trip" in March 2017. Plaintiff alleges, in June 2017, she presented a "proposed written contract" for a commission to be paid to her "equal to 30% of the tuition paid" by international students that she successfully recruited. She claims Dr. Connolly, and three members of the SCCC Board of Trustees (Board) gave her the "go ahead" on the international recruiting program contract. No signed contract was entered.

A collective bargaining agreement (CBA) between the adjunct faculty union and SCCC governed plaintiff's employment as an adjunct professor. According to the terms of the CBA, " [SCCC] shall not be bound by anything not expressed in writing." The Board's bylaws state that "[n]o claim or demand shall be incurred or paid unless it is authorized by law or by the Board, and funds thereof have been appropriated by the Board of Trustees."

At his deposition, Dr. Connolly testified concerning plaintiff's claim that he agreed to her proposed contract. He testified that "[n]o decision was made at

3

that [June 2017] meeting" and that plaintiff's proposed contract was never presented to the Board. Dr. Okay testified at her deposition that she was present at the June 2017 meeting, it was a "very broad general discussion," and Dr. Connolly did not give plaintiff the "okay to go or any term similar to that." Gandhi also testified that he knew plaintiff "had a contract proposal [she] wanted to recommend be implemented" but "it was too rich for our college to accept," and there was never any Board-approved contract for plaintiff's recruiting activities.

Plaintiff testified at her deposition that she reached an oral agreement for the international recruiting project during a meeting with Dr. Connolly and three members of SCCC's Board of Trustees, specifically, "Jerry Scanlan, Michael Spekhardt, and Megan something." Plaintiff alleged she was "given the final go ahead to begin recruitment for foreign students on behalf of SCCC," although she had already made two prior trips in 2016.

Plaintiff admitted at her deposition that she never met with the full Board and her proposed contract—providing her with a thirty percent commission for her recruiting services—was never approved by a Board resolution. She also admitted that the parties never entered into an agreement concerning her

4

compensation. Further, the proposed contract called for SCCC to pay plaintiff "when invoiced," but plaintiff never submitted an invoice to SCCC.

SCCC had paid plaintiff stipends and reimbursed her expenses for recruiting trips she took in 2016, 2017, and 2018. Plaintiff was paid $21,400 in stipends as compensation for the recruiting work, and an additional $5,698.41 in reimbursements. Plaintiff accepted these funds at the time they were paid and understood "expenses are for what I expend, and stipend is for the work."

Plaintiff's complaint alleges she recruited twenty international students to SCCC, resulting in $414,000 in paid tuition, but she failed to produce evidence during discovery to support this claim. However, SCCC records show that plaintiff recruited sixteen international students, and the tuition brought in by those students totaled $207,886.

In her complaints[1], plaintiff claimed that she was only partially compensated for her recruiting work. She cited the June 2017 proposed contract as evidence of the $124,000—thirty percent of the $414,000 her recruited students paid to SCCC in tuition she was owed.

---

[1] Plaintiffs two pending complaints had been consolidated under docket number SSX-L-278-19 and contained a combined nine counts.

A-2958-22

In plaintiff's response to interrogatory questions requesting whether she had comparative data to support the thirty percent commission, plaintiff responded she was paid $6,000 per recruited student at a neighboring institution, Morris County Community College (MCCC).  However, during her deposition, plaintiff admitted that MCCC did not pay her, and instead the international students' families paid her to place their children at the school.  Further, when asked about the value of comparable services, plaintiff stated "[t]here's no such comparable in my case because I'm consulting, and the recruiter definition doesn't fit the services I have given to the students."  Plaintiff's interrogatory answers stated she was unaware of any other individual performing similar services for a New Jersey community college, and that she was not in possession of similar recruiting agreements between institutions of higher education and recruiters.

After completion of discovery, defendants moved for summary judgment requesting dismissal of plaintiff's complaints.  The trial court granted the defendants' motion and dismissed her complaints with prejudice.  The court found that plaintiff failed to demonstrate genuine issues of material fact existed to avoid summary judgment concerning her quantum meruit claim.  Although the court found there was no dispute that plaintiff acted in good faith and that

6

SCCC accepted plaintiff's recruitment services, it further found that there was no reasonable expectation of compensation because her proposed contract was never accepted by SCCC and there was no way to determine the reasonable value of her services because her damages claim was speculative.

Similarly, the court found that plaintiff failed to sustain her unjust enrichment claim. The court found SCCC paid plaintiff $21,400 in stipends for her recruiting trips, and absent a valid agreement constituting more than that amount, she failed to raise any genuine issues of material fact supporting her claim for unjust enrichment.

Finally, the court found plaintiff was equitably estopped from claiming she was entitled to additional monies because she accepted the stipends and expense reimbursements that SCCC paid her. Therefore, her claim she was owed additional monies failed because it would be unjust since SCCC relied on plaintiff's acceptance of those payments as satisfaction of their agreed upon obligation.

## II.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73 (2022); Stewart v. N.J. Tpk. Auth./Garden State Parkway,

7

249 N.J. 642, 655 (2022); Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

## A.

Initially, we address plaintiff's argument surrounding the trial court's dismissal of her quantum meruit claim.

> Quantum meruit is a form of quasi-contractual recovery and "'rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 437 (1992) (quoting Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App. Div. 1966)). "Courts generally allow recovery in quasi-contract when one party has conferred a benefit on another, and the circumstances are such that to deny recovery would be unjust." Ibid.
>
> [Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002).]

To recover on a quantum meruit claim, a plaintiff must establish four elements: "(1) the performance of services in good faith, (2) the acceptance of

services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Ibid.

"[A] quasi-contractual obligation is wholly unlike an express or implied-in-fact contract in that it is 'implied by the law for the purpose of bringing about justice without reference to the intention of the parties.'" Saint Barnabas Medical Center, 111 N.J. 67, 79 (1988). "[T]he existence of an express contract excludes awarding relief regarding the same subject matter based on quantum meruit." Kas Oriental Rugs v. Ellman, 394 N.J. Super. 278, 286 (App. Div. 2007).

On appeal, defendants do not dispute plaintiff satisfied the first two quantum meruit prongs required in Starkey by: her performance of recruitment services in good faith; acceptance by SCCC of her services by the enrollment of sixteen international students she recruited and by payment of a stipend to her for these services as well as reimbursements for her travel expenses. Therefore, at issue on appeal are whether facts exist in the record presenting genuine factual issues to support the third and fourth elements of the required quantum meruit factors.

Plaintiff claims she expected to receive thirty percent of the tuition that her recruited international students paid to SCCC, and that the existence of the

A-2958-22

proposed contract is evidence of her expectation. We are unpersuaded. Plaintiff presented her proposed contract to President Connolly, and while there is a no substantial dispute that he gave her the "go ahead" to recruit international students, he did not have the authority to unilaterally approve her proposed terms of compensation for those services. The Board bylaws clearly require the Board to authorize any school expenditures. Because plaintiff did not obtain approval of her contract by the Board as required, we conclude the court's determination there could not be a reasonable expectation she would be paid a thirty percent commission based on the international students' tuition paid is supported by the record.

Plaintiff's argument the CBA does not apply because she was a "recruiter" is unsupported since she was employed as an adjunct professor—a job subject to and governed by the CBA. Clearly then plaintiff was obliged to present her proposed contract to the entire Board to obtain its approval. It is undisputed, however, she only approached Dr. Connolly, Dr. Okay, and Gandhi with the agreement and her proposed contract was never signed or presented to the entire SCCC Board. The undisputed evidence vitiates any expectation that plaintiff would be paid a thirty percent commission. Also, plaintiff accepted the stipends

and reimbursements without reservation, further contradicting her claim that she expected to be paid more.

Turning to the fourth element required to succeed in a claim for quantum meruit, plaintiff also failed to present evidence which created a genuine issue of material fact concerning the reasonable value of her services. Plaintiff failed to bring any relevant and admissible evidence forward in support of her claim that a thirty percent commission was a reasonable figure. Although plaintiff first used her payment arrangements with MCCC as a "comparator" stating that MCCC would pay her $6,000 per international student she recruited, she later abandoned that position, stating the parents of the international students were paying her that money once they were accepted into MCCC.

At her deposition, plaintiff admitted she had no evidence of any comparable value paid from a college or university similar to the services she was rendering to SCCC. Further, plaintiff ratified the amount that SCCC paid for her recruiting services by continuing to perform recruitment activities and accepting the stipends and cost reimbursements.

Therefore, we find no error in the trial court's grant of summary judgment to defendants regarding plaintiff's quantum meruit claim because the record confirms plaintiff failed to provide evidence creating factual issues supporting

11

her position that she had a reasonable expectation of compensation or a valid comparable amount for the reasonable value of her services. We conclude a rational factfinder would not be able to find otherwise.

B.

We now turn to plaintiff's claim for unjust enrichment. In order to recover under an unjust enrichment claim a plaintiff must show a "defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994) (citing Associates Commercial Corp. v. Wallia, 211 N.J. Super. 231, 243 (App. Div. 1986)). Therefore, a plaintiff must show that "[they] expected renumeration from [a] defendant at the time [they] performed or conferred a benefit on defendant and that the failure of renumeration enriched defendant beyond its contractual rights." VRG Corp., 135 N.J. at 554.

Here, defendants paid plaintiff $21,400 in stipends and $5,698.41 in reimbursements for her recruitment activities. The record demonstrates there was no written agreement stating plaintiff was entitled to thirty percent of the international students' paid tuition approved by the Board as required by the bylaws. Nor was there a valid reasonable expectation by plaintiff for such payments to support that SCCC was somehow unjustly enriched. There was no

12

failure by defendants to remunerate plaintiff because they paid her, and she accepted the payment they provided her for the services she rendered to the school. Plaintiff has failed to demonstrate sufficient facts to support that defendants retained a "benefit without payment [that] would be unjust." County of Essex v. First Union Nat. Bank, 373 N.J. Super. 543, 549-50 (App. Div. 2004). Therefore, we conclude, as did the trial court, that plaintiff failed to present genuine issues of material fact entitling her to recover under her unjust enrichment claim and we determine the court did not err by granting summary judgment to defendants concerning this claim.

C.

Plaintiff further argues on appeal that the court improperly concluded she was equitably estopped from bringing claims for additional payment from defendants. Although our prior determinations do not require us to address this argument due to its mootness, we do so for completeness and find no error in Judge Weaver's conclusion.

Equitable estoppel is "founded in the fundamental duty of fair dealing imposed by law" and prevents injustice by not allowing a party to go back on a course of action that another party has relied on to their detriment. Knorr v. Smeal, 178 N.J. 169, 178 (2003). The policy ensures "'that one may, by

13

voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct.'" Middletown Twp. Policeman's Benevolent Ass'n Local No. 124 v. Twp. of Middletown, 162 N.J. 361, 367 (2000) (quoting Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-504 (1955)). Further, fraudulent intent is not required for equitable estoppel to apply. Hendry v. Hendry, 339 N.J. Super. 326, 336 (App. Div. 2001).

The undisputed facts in the record show plaintiff accepted the stipends and expense reimbursements for three separate recruiting trips over the course of approximately two years. Reason dictates SCCC had a right to rely on this course of conduct and the terms of payment as satisfaction of plaintiff's remuneration. Therefore, we conclude it would be unjust for plaintiff to be paid additional monies after SCCC relied on plaintiff's original acceptance of the payment structure and amount paid.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2958-22